I turn to the last case on our calendar today, which is Petitpas v. Martin. Mr. Boyle, go ahead. Thank you, Your Honor. May it please the Court, my name is Michael Boyle, and I'm here representing Chad Petitpas. Under City of Cleveland, review of rational basis calls for some skepticism, not mere ratification or hunting for hypotheticals. In this case, an absence of evidence cannot withstand rational basis review. The district court made several errors. One, where it's essentially said that if there's disagreement by the parties over an issue, in this case recidivism, that that in and of itself establishes a rational basis. And defendants will always protest their good intentions and will always have some reason for their discriminatory action. In Fortress Bible, before this court, the town of Greenberg didn't say, we tried to shake the church down for pilot payments and they wouldn't give them. The town said, well, the slopes are too steep, the parking is too little, the traffic is too heavy. But in fact, when the courts probed, they found that when they compared the comparables, when they looked at how the towns conducted the hearings, they found that the decision couldn't stand. So this kind of review is consistent with the court's decisions and the Supreme Court's decisions, and it's important here. The court or the government relies heavily, the Department of Correction defendants rely heavily, on a very well-turned phrase from McCune v. Lyle about 20 years ago about sex offenders being more likely to reoffend in the future. It's not factual evidence. The factual evidence on the record is really very much to the contrary, that the defendants have repeatedly advanced from level three to level two in their classification system. Inmates who, under the factors that the Department of Correction states it follows, have records which are similar or worse to Chad Petipas, the appellate here. You're not, though, your argument is not, you're not comparing people convicted of sex offenses with other sex offenders, though, are you? You're comparing them with other inmates? I am comparing them with, yes, I am comparing them with inmates who the DOC has actually advanced from level three to level two, because they've never advanced a sex offender from level three to level two. And I'm comparing them based on the factors as scored by the DOC, based on the DOC's requirements to advance. But how are they similarly situated? How are those individuals convicted of non-sex offenses similarly situated? They're situated in the ways that the DOC mandates for review. Length of sentence, seriousness of crime, rehabilitation. Those are the factors that the DOC says that it considers, and considering those factors, they are comparable. But sex offenders are not a protected class. That's right. No questions. I'm not here to change that. No, no, I was not suggesting that you were. No, and nor am I making a class, a full class argument. I'm making a class of one argument for Mr. Petipas based on these comparables and based on how DOC, you know, the, I don't know, nefarious is probably too strong a word, but the manner in which DOC operates its system with a unique requirement where only sex offenders have this extra level of review, where DOC has never granted this level of review, where other factors like rehabilitation from drugs, rehabilitation from gangs, those can allow your score to advance. But no matter how successful your rehabilitation and sex offender treatment, it can never advance your score. So I think the combination of... But is that, I mean, it sounds, you know, perhaps you're making an argument about maybe what might arguably be poor policy, but that's, I mean, how is that enough to support the claim, the legal claim that's being made here? Well, I'm certainly not arguing that the general legislative policy and sentencing is in issue here. But where the DOC is operating its system in a way that it appears to be targeting this class directly despite these comparable factors, I think it calls into question and calls for some scrutiny, some rational scrutiny of the arguments the DOC advances. Mr. Boyle, I'd like to ask some questions which are really not directly related to these issues. I used to be a district judge in Connecticut, and I had most of the correctional institutions before me. The Brooklyn, Connecticut Correctional Institution is where he is lodged, is that right? It was at the time the lawsuit was filed. He's been moved to Carl Robinson, Your Honor. To Robinson, which is up in... Carl Robinson is in Enfield. Brooklyn is very sex offender heavy. Carl Robinson is a more general population. That's what I was going to ask you. Is the Brooklyn Correctional Institution devoted in effect to a set of inmates? Formally, no, but informally, yes. There's a very, very high concentration of sex offenders or people with sexual need treatment scores of two or greater at Brooklyn. It used to be, and maybe still is, a very low security facility. Is that right? No, Your Honor. It's a level three facility. It's a level three facility. There's a level two facility, which is where virtually all the advanced reentry programs are concentrated. That's a level two facility. Brooklyn does not, unfortunately, have... I mean, it has some programs, which the... So Brooklyn has the highest category? Well, I mean, they closed Northern, which was higher still. It's level three, and level two is the level where the reentry programming is available. All right. So, again, with this indicia of a targeted response, with the district court's argument that essentially, hypothetically, perhaps the fact that sex offenders actually have relatively low reoffense levels could indicate that the deterrent effect of housing them in high security facilities and not allowing them to participate in these rehabilitative activities might be such a deterrent that that's why they don't reoffend. I'd argue that that's not a valid basis for the hypothetical, that this deterrence is essentially punishment, and the legislature has said what the punishment classification is, and that the way the DOC is operating the system, they're essentially guaranteeing additional punishment for sex offenders without the proper individual review that the system says that they deserve. Finally, again, on the issue of vulnerability to assault, I think that there are real factual issues about whether it is, in fact, safer to house sex offenders in higher security classification facilities with more dangerous inmates as opposed to lower security facilities. Thank you very much. Thank you. And you've reserved some time. Ms. Medeiros, go ahead. Good morning, Your Honors, and may it please the Court. My name is Janelle Medeiros, and I represent the defendants' appellees in this matter. This Court should affirm the judgment of the District Court for two main reasons. First, the District Court correctly applied rational basis review to the claim at issue and critically found that the plaintiff had not come forward with evidence to discredit every conceivable rational basis that could exist for the policy at issue. And secondly, the plaintiff has not made the threshold showing that's required for any type of equal protection claim, that he is similarly situated to other individuals who are being treated differently than he is. Before, as a preliminary matter, I just want to address a few things that Plaintiff's Counsel stated and that Judge Cabrani said questions about. With regard to the issue of the level of Brooklyn versus the level of Willard Cybulski and what programs are available at each, the only evidence in the record before the trial court indicated that there really aren't necessarily any better or more advanced programs at Willard Cybulski compared to other prisons with a higher level. So the only evidence in the record was an affidavit from a deputy warden at Willard Cybulski, the level two prison in Connecticut, and who he had also been an administrator at other higher level prisons. He noted there are different programming opportunities at all different prisons. There may be better ones in the view of certain inmates at a higher prison versus a lower prison, and there's obviously no constitutional right to particular programming unless it's being denied for an improper purpose. And again, the only evidence was that there are reentry counselors and reentry programs at every facility within the Connecticut Department of Corrections. Even at a level four facility, there are reentry programming and reentry counselors available at those facilities as well. But with regard to the issue of rational basis, the court below correctly applied rational basis, and none of the plaintiff's arguments on appeal really provide any persuasive argument that rational basis was not the applicable policy here, or the applicable standard of review to the policy here. It seems that the plaintiff may be arguing that pure, ordinary, hypothetical-based rational basis should never apply anymore. That simply doesn't square with the precedent of this court and the Supreme Court, which has consistently applied that type of rational basis unless there's some reason not to, and the plaintiff hasn't put forward any persuasive reason why that should be the case here, or why this court should apply rational basis with bite or some other level of heightened scrutiny. With regard to the two rational basis that were found by the court below, both were entirely plausible and entirely correct. With regard to the first basis, recidivism, the possibility of recidivism, the district court found that the evidence – well, I apologize. Just as a preliminary matter, the plaintiff didn't present any admissible evidence to discredit either rational basis before the trial court. The only evidence presented to debate the recidivism basis was an inadmissible study or PowerPoint presentation that was pulled off of the Internet. It really wasn't properly before the court anyway. Even if it were properly before the court, the district court was correct in holding that that would not be enough to discredit the possible rational basis of recidivism entirely. The district court was correct in holding that the plaintiff would not be required to just show that there is some debate about the rationality of this reason, but that it's essentially beyond debate, that no reasonable juror could ever find that recidivism could be a rational basis for this policy. And with regard to the issue of Mr. Petipas' own safety or the safety of sex offenders in general being housed at a higher level facility as a rational basis for this policy, the plaintiff, again, did not present any evidence below to contradict that rational basis. The only evidence that was presented was presented in a supplemental letter brief after oral argument on the summary judgment below. And again, it would be inadmissible. It's a classic hearsay. It's just a newspaper article. Even if it were admissible, it's just an anecdotal account. It's not enough to discredit the possible rational basis presented. Ultimately, with regard to rational basis, the plaintiff has a very strong burden to overcome. He would have to overcome a strong presumption of rationality that's present in all rational basis cases, but which is especially important here where we're talking about a prison regulation, which has the extra layer of deference accorded to it. With regard to the issue of similarity situated, Judge Lee hit the issue on the head with her questions about whether plaintiffs could ever be similarly situated to a non-sex offender. It was unclear below and here. It's still a little bit unclear whether a plaintiff is saying sex offenders of the class are not similarly situated or are similarly situated to non-sex offenders, or if Mr. Petipas himself is similarly situated under a Class I theory. Under either theory, the plaintiff has not made that threshold showing. And so the Court could just affirm on that ground as well. Ultimately, the district court's decision should be affirmed because it applies to the correct standard of review. And additionally, alternatively, because the plaintiff failed to meet his burden to make the threshold showing of similarly situated. And unless the Court has any further questions, the defendants would urge the Court to affirm. Thank you, Your Honors. Mr. Boyle, you've reserved some time. All right. So, again, with regard to the similarly situated question, we're using DOC's data. We're using DOC's standard. It was hard to get it, although counsel was extremely cooperative in getting what we could get. But, indeed, it does show what we claim, which is that there are significant numbers of inmates with, based on the factors which DOC counts, who are being advanced from Level III to Level II, with the only exception being sex offenders. In terms of recidivism, we presented a 30-page summary of a 200-plus-page study of two very large studies run by the State of Connecticut using DOC data and Connecticut judicial system data to show five-year recidivism rates, two different five-year cohorts, one ending in 2017, one ending in the late, early, early, what, 2011. And they show that, overall, the recidivism rates for sex offenders and STIs, again, this group is diverse. It's not only sex offenders. It's also people with sexual needs, treatment scores of two or greater, some of whom have never committed a sex offense. But that group has a slightly lower overall recidivism rate over the periods. So there is data that really is in dispute here. And the court resolved it by essentially saying, we're not going to look at recidivism because we can perhaps hypothetically explain the lower recidivism by saying that there's a deterrent effect to refusing to reclassify people. And that's really not a valid argument. It's a punishment-deterrence argument. It's not really how a classification system should be run. Thank you. Thank you, Mr. Boyle. We'll reserve the decision. We thank you both very much. And we are adjourned. Thank you.